IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAOR HIZKIYEV and LIRON BARAK,

    *Plaintiffs and Counterdefendants*,

v.      No. 1:24-cv-00338-SB

KASEYA, INC.,

    *Defendant and Counterplaintiff*.

---

Denise Seastone Kraft, Patricia L. Enerio, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Peter J. Mardian, Tom A. Paskowitz, SIDLEY AUSTIN LLP, New York, New York.

    *Counsel for Plaintiffs.*

David B. Anthony, Michael William McDermott, Peter C. McGivney, BERGER MCDERMOTT LLP, Wilmington, Delaware.

    *Counsel for Defendants.*

**MEMORANDUM OPINION**

July 28, 2025

BIBAS, *Circuit Judge*, sitting by designation.

All happy companies are alike; each unhappy company is unhappy in its own way. IT firm Kaseya's purchase of BitDam made everyone unhappy. Liron Barak and Maor Hizkiyev, BitDam's founders, did not see eye to eye with Kaseya's leadership. Kaseya fired them for cause and refused to pay them any more of their performance bonuses. Then Barak and Hizkiyev sued to get the unpaid bonuses. Kaseya countersued, claiming bad faith and asking for damages, declaratory relief, attorney's fees, and costs. Only Kaseya's counterclaims are before me today; they do not hold water. So I dismiss them and let the rest of the case proceed.

### I. A MERGER SPOILED

Liron Barak and Maor Hizkiyev founded BitDam, an Israeli cybersecurity company. Counter., D.I. 31 at 73 ¶ 14. It was bought by another cybersecurity company, Datto. Then Kaseya, an American IT company, bought both Datto and BitDam to be its wholly owned subsidiaries. Barak and Hizkiyev stayed on as BitDam's executives. *Id.* at 80 ¶¶ 64–66. But things went sour; the parties disagree about why.

Kaseya contends that Barak and Hizkiyev "willfully ignored" instructions and "wasted" Kaseya's resources. *Id.* at 69 ¶ 1, 72 ¶ 9. It wanted them to draw up a formal business plan. *Id.* at 71–72 ¶ 8. But BitDam's founders allegedly refused to do business planning by dodging meetings and taking vacations. *Id.* at 71 ¶ 7. Kaseya also alleges that Barak and Hizkiyev wasted its resources by giving employees "frivolous office perks" (food and coffee). *Id.* at 73 ¶ 17. They also unsuccessfully tried to book $20,000 business-class plane tickets for a sales conference against express instructions and company policy. *Id.* at 73–74 ¶ 18. BitDam was hemorrhaging money. But,

2

instead of stanching the flow, Barak and Hizkiyev were reaching in and grabbing more. *Id.* at 71 ¶ 6.

Barak and Hizkiyev respond that Kaseya "undermined and isolated" them, sandbagged BitDam, and refused to pay their contractually defined performance bonuses. Compl., D.I. 2 at 2–3 ¶ 4. They say they gave plenty of business ideas, including in writing. D.I. 39 at 4–5. Kaseya just did not like their ideas and made up reasons to fire them.

Frustration mounted. Finally, at a meeting with Kaseya executives, the dam burst. Counter. 77 ¶ 48. Fed up, Kaseya proposed a separation agreement then and there. *Id.* The founders declined. *Id.* at 77 ¶ 49. So Kaseya fired them on the spot for cause based on their alleged "willful misconduct" and "material dishonesty." *Id.* at 78 ¶ 51.

Then the parties sued each other. First, Barak and Hizkiyev sued Kaseya in this Court for breach of contract and breach of the implied covenant of good faith and fair dealing. Compl. 14–15 ¶¶ 44–47. They want Kaseya to pay their performance bonuses. *Id.* at 15 ¶¶ 47–48. They also sued Kaseya in Israeli court to enforce their employment agreements. Counter. 83 ¶¶ 82–83.

Kaseya counterclaimed. It asks for (1) damages from Barak and Kizkiyev's breach of their fiduciary duties by acting in bad faith, (2) declaratory relief "resolv[ing] some or all of the controversies between the parties," and (3) attorney's fees and costs. *Id.* at 79 ¶ 62, 82 ¶ 77, 83–85 ¶¶ 79–88.

Barak and Hizkiyev moved to dismiss Kaseya's counterclaims for failure to state a claim. D.I. 32; Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and is ripe for my review. I take the facts alleged in the counterclaim as true and draw reasonable inferences in Kaseya's favor. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

## II. KASEYA HAS STANDING TO BRING ITS COUNTERCLAIMS

To start, Barak and Hizkiyev argue that Kaseya lacks standing to claim breach of fiduciary duty. D.I. 33 at 10. They contend that under the internal-affairs doctrine, Israeli law governs BitDam's activities. *Id.*; *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). And Israeli corporate law presents additional hurdles to clear before bringing a claim. D.I. 33 at 10 (detailing an exhaustion requirement). Without meeting those requirements, the claim cannot proceed.

Kaseya need not clear those hurdles because Delaware law, not Israeli law, applies. BitDam is a wholly owned subsidiary of a Delaware company. Counter. 72 ¶ 10, 73 ¶ 15. And under Delaware law, the state of incorporation of the parent company controls the relationship. *See McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987) (applying foreign law in a dispute between a foreign-incorporated parent and domestic wholly owned subsidiary under the internal-affairs doctrine). Delaware law lacks Israeli law's procedural hurdles to bringing a claim. Thus, Kaseya has standing to bring its claim under Delaware law.

### III. KASEYA DOES NOT STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

Barak and Hizkiyev were key managerial employees, so they owed Kaseya a duty of care. But Kaseya does not state a claim for breach of fiduciary duty. The founders are protected by the business-judgment rule and its "policy of maximal deference." *In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 597 (Del. Ch. 2010). And Kaseya has not pleaded enough facts to overcome it.

#### A. Barak and Hizkiyev owe Kaseya fiduciary duties

Kaseya plausibly alleges that Barak and Hizkiyev were key managerial employees who owed it fiduciary duties. The directors of a wholly owned subsidiary must manage its affairs in the best interests of the parent and its shareholders. *Anadarko Petrol. Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988). Delaware caselaw imposes that same burden on officers and key managerial employees. *See Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009); *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980).

Barak and Hizkiyev were key managerial employees. True, the acquisitions downgraded their titles from "CEO" and "CTO" to "Senior Director." Counter. 80 ¶¶ 64–65. But they kept managing all BitDam's employees, operations, and strategy. *Id.* at 79–80 ¶¶ 63–66. Under Delaware law, employees who run departments, supervise employees, and take part in financial decisionmaking owe the same duty of care as directors and officers. *See Sci. Accessories Corp.*, 425 A.2d at 961 n.5; *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *10 (Del. Ch. May 18, 2009). So Kaseya adequately alleged that Barak and Hizkiyev were key managerial employees who owed fiduciary duties. *Id.*

Stymied, the founders argue that only *directors* of a subsidiary owe fiduciary duties to the parent. D.I. 39 at 3–4. But precedent says otherwise. *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 349 (Del. Ch. 2023) ("The Delaware Supreme Court has held that under Delaware law, corporate officers owe the same fiduciary duties as corporate directors."). In fact, their main citation refutes the "extreme literalism devoid of substance" in reading "director" to exclude any non-director officers or employees. *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1208 (Del. Ch. 2010).

### B. Kaseya does not adequately allege bad faith

Ordinarily the business-judgment rule shields fiduciaries from liability in all but the most extreme cases. Under that rule, no liability arises unless "a decision lacks any rationally conceivable basis." *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 34 (Del. Ch. 2014). To get around the business-judgment rule, a plaintiff can plead that a defendant breached his duty of loyalty, was grossly negligent, or acted in bad faith. *In re Dura Medic Holdings, Inc.*, 331 A.3d 796, 822 (Del Ch. 2025). Kaseya makes two arguments for bad faith. D.I. 37 at 19–20. Each fails.

*First,* Kaseya claims bad faith in the style of *Caremark* and its progeny. *See In re Caremark Intern. Inc. Deriv. Litig.*, 698 A.2d 959 (Del Ch. 1996). That requires showing that the founders' actions added up to "intentional dereliction of dut[ies or] a conscious disregard for … responsibilities." *In re Walt Disney Co. Deriv. Litig. (Disney II)*, 906 A.2d 27, 62 (Del. 2006). Either way, that claim entails both knowledge of a risk and failure to either implement of an oversight system or pay attention to it. *Marchand v. Barnhill*, 212 A.3d 805, 821 (Del. 2019). When Delaware courts have

sustained a *Caremark* theory, it is usually when a company's lack of oversight causes it to ignore regulations or act illegally. *See McDonald's*, 291 A.3d at 677; *see, e.g.*, *Caremark*, 698 A.2d at 961–62 (illegal healthcare kickbacks); *Marchand*, 212 A.3d at 810 (FDA regulations); *In re Boeing Co. Deriv. Litig.*, 2021 WL 4059934, *4 (FAA regulations); *In re Clovis Oncology*, 2019 WL 4850188, *1 (FDA regulations).

Kaseya's arguments fall far short of that. It argues only that Barak and Hizkiyev "deliberately and willfully avoided … meetings and refused to engage" with suggestions. Counter. 74 ¶ 23. Not listening to your boss is different from willfully ignoring a legal duty or willfully blinding yourself to red flags. Kaseya's argument begs the question. It rightly points out that if a fiduciary "intentionally fails to act in the face of a known duty to act," then that violates his duty. D.I. 37 at 19 (quoting *Disney II*, 906 A.2d at 67). But it does not provide any authority for the proposition that there is a fiduciary duty to always listen to your boss.

And in fact, Barak and Hizkiyev acted on Kaseya's instructions. Counter. 75 ¶¶ 29, 33, 35, 76 ¶¶ 37, 40. They worked on a plan. *Id.* They even presented a business plan in writing. *Id.* ¶ 40. Kaseya just disagreed with their proposal. *Id.* at ¶ 37.

*Second*, Kaseya appears to argue for a waste theory of bad faith. Though its briefing is vague, it argues that Barak and Hizkiyev breached their duty of loyalty by "frivolously" "squander[ing]" money. D.I. 37 at 13. The closest match to this theory in Delaware law is a waste claim, so I construe it as such. And it fails as such.

A claim for waste requires "unconscionable" conduct. *Person Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at *42 (Del. Ch. Apr. 14, 2017), *as*

7

*corrected* (Apr. 24, 2017). "[T]he standard for waste is a very high one that is difficult to meet." *Boeing*, 2021 WL 4059934 at *35. To prevail, "the plaintiff must … show[] that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests." *Id.*; *see also Disney II*, 907 A.2d at 759; *In re Citigroup Inc. Shareholder Deriv. Litig.*,964 A.2d 106, 136 (Del Ch. 2009).

Kaseya's allegations do not come close to meeting that high bar. It points to hiring too much staff, taking too much vacation time, and trying to book expensive flights for a pointless conference. Counter. 69–70 ¶¶ 1, 3, 81 ¶ 69. And it emphasizes how the founders continued their "[p]rior … plan to rapidly expand the Company by hiring costly engineering staff." *Id.* at 74 ¶ 19.

But each decision has a facial business justification. Barak and Hizkiyev wanted to maintain BitDam's pre-merger operations. *Id.* 69–70 ¶ 3, 76 ¶¶ 37, 40. They wanted to sell their product. *Id.* 70 ¶ 3. True, these may have been poor, misguided, and loss-making transactions. But "merely poor, misguided, or loss-making transactions are insufficient for a finding of waste." *Kandell ex rel. FXCM, Inc. v. Niv*, 2017 WL 4334149, *15 (Del. Ch. Sep. 29, 2017).

## IV. KASEYA CANNOT GET DECLARATORY RELIEF OR ATTORNEY'S FEES

Kaseya cannot get a declaratory judgment on the validity of the for-cause firings because such a judgment would duplicate the issues in the complaint. And it cannot bring a claim for attorney's fees at the start of the litigation; it must await the end.

8

### A. The complaint and counterclaim overlap completely

Kaseya seeks a declaratory judgment on the parties' "rights and obligations" as to the bonus and employment contracts. Counter. 82 ¶ 73. Declaratory relief is improper when there is "a complete identity of factual and legal issues between the complaint and the counterclaim." *Aldens, Inc. v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975). That is because adjudicating the complaint would moot the declaratory-judgment request. *Id.*

There is complete overlap here. Kaseya wants me to decide whether the for-cause termination was valid and whether Barak and Hizkiyev met their bonus targets. Counter. 82 ¶¶ 74–75. Barak and Hizkiyev want me to decide whether the for-cause termination was valid and whether Barak and Hizkiyev met their bonus targets. Compl. 44 ¶ 165, 45 ¶ 170, 46 ¶ 175, 47 ¶ 180. I cannot decide one without deciding the other.

Kaseya protests that deciding whether Kaseya breached the covenant of good faith and fair dealing is not the same as deciding whether they were properly fired for cause. D.I. 37 at 18. But Kaseya breached the covenant only if it improperly fired the founders for cause. *See* Compl. 44 ¶ 165, Exs. 5 § 4(b), 6 § 4(b); Counter. 82 ¶ 74. So both claims require answering the same factual and legal question: whether Barak and Hizkiyev were properly fired for cause. A request for declaratory judgment would thus be moot.

### B. Parties can ask for attorney's fees only at the end of a case

Finally, Kaseya takes issue with Barak and Hizkiyev's filing two lawsuits: one here to get their bonuses and one in Israel to enforce their employment agreements.

9

D.I. 37 at 18–19. So Kaseya asks me to award attorney's fees and costs for what it calls "oppressive, vexatious" litigation. Compl. 22–25 ¶¶ 78–88.

I cannot do so. Kaseya cites no authority establishing a cause of action for "Attorney's Fees and Costs." *Id.* Federal Rule of Civil Procedure 54(d)(2) lets Kaseya seek fees and costs *after* a judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). It is not a freestanding cause of action. Besides, the founders filed in two places because they are following their contracts' mandatory forum-selection clauses. *See* D.I. 39 at 11; Compl. Exs. 1 § 7.4, 2 § 7.4, 5 § 11(e), 6 § 11(e). Kaseya can ask for fees at the end of the case.

\* \* \* \* \*

Kaseya has not plausibly alleged that Barak and Hizkiyev breached their fiduciary duties by acting in bad faith. I cannot give a declaratory judgment that entirely overlaps with the original complaint. And it is too early to move for attorney's fees and costs. So I will grant Barak and Hizkiyev's motion to dismiss.